**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NUVASIVE, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. _____ |
| | ) |
| **ADAM RICHARD,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT**

By and through undersigned counsel, and for its Complaint against Adam Richard ("Defendant"), NuVasive, Inc. ("NuVasive"), states that:

**Introduction**

1. NuVasive files this Complaint because Defendant – a former sales representative affiliated with one of NuVasive's exclusive distributors, Rival Medical, LLC ("Rival Medical") – is violating the reasonable non-solicitation and non-competition obligations he owes to NuVasive. Additionally, Defendant illegally converted customized surgical instruments that belong to NuVasive and used them while violating those contractual obligations. Accordingly, NuVasive asks this Court to: (a) issue preliminary and permanent injunctions which require Defendant to comply with the contractual obligations he owes to NuVasive; and (b) award NuVasive damages to compensate it for the harm caused by Defendant's illegal acts.

**Factual Allegations**

**The Parties**

2. NuVasive is a market-leading, innovative designer, manufacturer, and promoter of products and processes used to treat spinal disease. It is incorporated under the laws of Delaware and maintains its principle place of business in San Diego, California.

3. NuVasive markets its products through a highly trained sales force which consists of direct employees and exclusive distributors.

4. Defendant is a former sales representative of Rival Medical – one of NuVasive's exclusive distributors. He is a citizen of the State of Massachusetts who resides at 401 K Street, South Boston, Massachusetts 02127.

**Jurisdiction and Venue**

5. The parties are completely diverse and the amount in controversy is greater than $75,000, exclusive of interest or costs. Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6. As Defendant lives in Boston, performed services on NuVasive's behalf in the Boston area, and is violating his contractual obligations in the Boston area, he is subject to the Court's personal jurisdiction. Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**NuVasive's Business**

7. NuVasive's industry is highly competitive. Industry participants typically require their sales personnel – be they employees or independent contractors – to agree to post-employment covenants which restrict their ability to compete with their former employers for a set amount of time.

8. NuVasive markets its surgical products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents. NuVasive invests substantial funds into providing this sales force with extraordinary, specialized, comprehensive, and industry-leading training. This training supplies NuVasive's sales force with a deep understanding of

NuVasive's products, methodology, trade secrets, and other valuable confidential or proprietary information.

9. NuVasive invests significant time, money, and resources into its sales force so that they are able to favorably represent the company and create goodwill with potential and existing NuVasive customers. This goodwill, arising from the substantial customer relationships developed between NuVasive's sales personnel and its customers, belongs to NuVasive as it is the product of NuVasive's significant investment.

10. NuVasive provided Defendant with proprietary training and entrusted him with its confidential and proprietary information during his engagement with NuVasive. Additionally, Defendant became the face of NuVasive to many of the surgeons, hospitals, and other NuVasive customers in his NuVasive sales territory.

11. During his engagement with NuVasive, Defendant generated goodwill with NuVasive's current and prospective customers. NuVasive owns that goodwill.

**Defendant's engagement with NuVasive**

12. Defendant's engagement with NuVasive began in August of 2017 and ended in April of 2019.

13. Defendant's first engagement was as a sales associate for an exclusive distributor of NuVasive's products, where his territory ultimately included fifteen (15) Massachusetts hospitals.

14. On January 5, 2018, NuVasive hired Defendant as a directly-employed sales representative, at which time Defendant agreed to and signed a Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement between himself and NuVasive as

a condition of his employment (the "NuVasive PIIA"). NuVasive attaches a copy of the NuVasive PIIA, which is governed by Delaware law, as **Exhibit 1**.

15. On January 1, 2019, Rival Medical became the exclusive distributor of NuVasive's products for the sales territory of Massachusetts and Rhode Island via a three-year Sales Representative Agreement (the "Rival Medical Sales Agreement") between NuVasive and Rival Medical.

16. Timothy Day ("Day"), Rival Medical's Massachusetts Secretary of the Commonwealth Authorized Signatory, executed the Rival Medical Sales Agreement on Rival Medical's behalf.

17. On January 1, 2019, Defendant became an employee of Rival Medical when it hired him as a Representative Affiliate (i.e., a sales representative).

18. As a condition of becoming Rival Medical's employee, Defendant agreed to and executed a Proprietary Information, Inventions Assignment, Arbitration, and Restrictive Covenants Agreement with Rival Medical (the "Rival Medical PIIA"). NuVasive attaches an exemplar of the Rival Medical PIIA, which is governed by Massachusetts law, as **Exhibit 2**.[1] NuVasive attaches a copy of the Key Terms Summary and Defendant's signature page for the Rival Medical PIIA as collective **Exhibit 3**.

19. The Rival Medical PIIA signed by Defendant and the exemplar Rival Medical PIIA, attached as **Exhibit 2**, are identical.

20. Sections VI and VII of the Rival Medical PIIA preclude Defendant from, during the term of his engagement with Rival Medical and for one year after that engagement ends, within his sales territory:

---

[1] This exemplar copy was executed by Chris Sullivan.

      a. competing with NuVasive;

      b. soliciting, enticing, persuading, inducing, calling upon, or providing services to any NuVasive Customers (as defined by the Rival Medical PIIA) on behalf of a competitive company; and

      c. inducing or influencing, or seeking to induce or influence, any NuVasive employee, agent, independent contractor, consultant, etc. to join a competitive business.

21. The restrictive covenants contained in Sections VI and VII of the Rival Medical PIIA are reasonably limited temporally (as they are limited to one year after the termination of Defendant's engagement) and geographically (as they are limited to his Customers as defined therein).

22. Defendant expressly acknowledged that his Rival Medical PIIA's restrictive covenants: (a) are necessary to protect legitimate business interests; (b) reasonable in time and scope; and (c) will not preclude him from gainful employment if enforced.

23. Section VIII of the Rival Medical PIIA is titled "NUVASIVE AS THIRD PARTY BENEFICIARY" and states:

> It is the intent of the Company, Nuvasive [sic] and Employee that NuVasive, to the fullest extent permitted by law, shall be an intended third party beneficiary of Employee's obligations herein concerning confidentiality, non-solicitation, non-competition, proprietary information and all other restrictive covenants and, accordingly, NuVasive shall have the right to directly enforce any or all of Employee's obligation's herein. Moreover, Employee has reviewed Sections 5.08 and 5.09 of Company's Agreement with NuVasive[2] and agrees to comply with said sections, the failure of which shall enable NuVasive to directly enforce Employee's obligations concerning said sections.

24. Even if, assuming *arguendo,* that any of the non-competition and/or non-solicitation obligations in the Rival Medical PIIA were unenforceable, Defendant remains subject

---

[2] Sections 5.08 and 5.09 of the Rival Medical Sales Agreement contain Rival Medical's obligations to comply with relevant laws and policies and its non-competition and non-solicitation obligations respectively.

to non-competition and non-solicitation obligations contained in the NuVasive PIIA, which extend for one year following the termination of his engagement with NuVasive in April of 2019.

**Day notifies NuVasive that he is dissolving Rival Medical**

25. On Saturday, March 30, 2019, Day emailed NuVasive's President, U.S. Commercial, stating that, "[t]he purpose of this e-mail is to provide notice that Rival Medical, LLC has begun dissolution. I am grateful for the friendships and memories that I have at NuVasive and will organize the appropriate transition."

26. On Monday, April 1, 2019, Day again emailed NuVasive's President, U.S. Commercial, stating that April 1, 2019, would be his "last day."

27. Day is now affiliated with NuVasive's competitor, Alphatec Spine, Inc. ("Alphatec").

**Defendant joins Day at Alphatec and begins violating the contractual obligations he owes to NuVasive**

28. Within days of April 1, 2019, Defendant informed NuVasive that he would not continue his relationship with NuVasive.

29. Upon information and belief, Day recruited Defendant to join him at Alphatec.

30. Defendant is now affiliated with Alphatec.

31. On April 23, 2019, a NuVasive representative observed Defendant and Day at Beth Israel Deaconess Medical Center in Boston, Massachusetts ("Beth Israel") while a surgeon whom they serviced on NuVasive's behalf utilized Alphatec's products in a surgery.

32. Beth Israel is an account within Defendant's (and Day's) former Rival Medical sales territory. As such, they both solicited and serviced this account.

33. Defendant (and Day) solicited and performed services for the surgeon referenced in paragraph 31 during (and before) their tenures at Rival Medical.

34. Defendant and Day possess NuVasive's confidential and/or proprietary information about Beth Israel and the surgeon referenced in paragraph 31.

## Count I – Breach of Contract

35. NuVasive incorporates the allegations contained in paragraphs 1 through 34.

36. The Rival Medical PIIA (like the NuVasive PIIA) is a valid and enforceable contract which is supported by adequate consideration.

37. NuVasive is an express third-party beneficiary to, among others, Sections VI and VII of the Rival Medical PIIA and is entitled to enforce them.

38. The Rival Medical PIIA's restrictive covenants (like those found in the NuVasive PIIA) are reasonable based on all the circumstances.

39. Defendant breached (and/or is breaching) a number of the Rival Medical PIIA's (as well as the NuVasive PIIA's) provisions including, without limitation, Sections VI and VII by, without limitation, competing with NuVasive in his former Rival Medical sales territory by, without limitation, soliciting his former NuVasive Customers on Alphatec's behalf.  Indeed, there is no reason for Defendant and Richard to meet at Beth Israel that is not related to converting NuVasive's business to Alphatec.

40. Defendant's breaches of the Rival Medical PIIA (and the NuVasive PIIA) damaged, and will continue to damage, NuVasive.

## Count II – Injunctive Relief

41. NuVasive incorporates the allegations contained in paragraphs 1 through 34.

42. NuVasive is likely to prevail on its claims that Defendant is violating the Rival Medical PIIA (and the NuVasive PIIA).  Indeed, the indisputable facts establish (or strongly

indicate) that Defendant is soliciting and providing services to his former NuVasive customers within his sales territory on Alphatec's behalf.

43. As Defendant agreed in Section XX of the Rival Medical PIIA (as well as in Section XVIII of the NuVasive PIIA), irreparable harm, for which remedies at law or in damages are inadequate, will result if Defendant is not preliminarily and permanently enjoined from violating the Rival Medical PIIA's non-competition and non-solicitation provisions (or the NuVasive PIIA's restrictive covenants). Indeed, if Defendant is not enjoined, Defendant will likely continue soliciting and providing services to his former NuVasive customers within his sales territory.

44. Granting the requested injunction will not harm Defendant as he is already contractually prohibited from doing what NuVasive seeks to enjoin him from doing, and NuVasive will post a bond sufficient to cover any damages he does suffer.

45. Granting the requested injunction is in the public interest as the public has an interest in having reasonable contracts (such as the Rival Medical PIIA) enforced as written.

## Prayer for Relief

WHEREFORE, NuVasive respectfully requests that this Court:

A. issue preliminary and permanent injunctions which prohibit Defendant from violating the non-competition and non-solicitation obligations in his Rival Medical PIIA (or, alternatively, his NuVasive PIIA);

B. find that Defendant violated his contractual obligations to NuVasive, and that these acts or omissions caused NuVasive to incur damages;

C. award NuVasive all of the damages it is entitled to receive including, without limitation, compensatory and punitive damages;

D. award NuVasive pre and post-judgment interest; and

E.	grant any other relief it deems just and proper.

Respectfully submitted,

**NUVASIVE, INC.**

By its attorneys,

*/s/ Michael S. Batson*
Holly M. Polglase (BBO #553271)
hpolglase@hermesnetburn.com
Michael S. Batson (BBO #648151)
mbatson@hermesnetburn.com
Matthew F. Renna (BBO #691589)
mrenna@hermesnetburn.com
HERMES, NETBURN, O'CONNOR & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
Tel: (617) 728-0050
Fax: (617) 728-0052


Christopher W. Cardwell, Esq. (*pro hac vice* forthcoming)
M. Thomas McFarland, Esq. (*pro hac vice* forthcoming)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

Dated: April 26, 2019