UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NUVASIVE, INC.,
    Plaintiff,

v.                                         Civil Action No. 19-10800-DJC

TIMOTHY DAY,
    Defendant.


NUVASIVE, INC.,
    Plaintiff,

v.                                         Civil Action No. 19-10995-DJC

ADAM RICHARD,
    Defendant.


REPORT AND RECOMMENDATION
ON PLAINTIFF'S RENEWED MOTIONS FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE (DAY, #195; RICHARD, #113). [1]


I. Introduction.

      Judge Casper allowed NuVasive's motions for summary judgment against defendants, finding that NuVasive had established that defendants breached non-competition and non-solicitation contractual obligations after they stopped working for NuVasive and went to work for a competitor. *NuVasive, Inc. v. Timothy Day, NuVasive, Inc. v. Adam Richard*, Civil Action Nos. 19-cv-10800, 19-cv-10995, 2021 WL 1087982 (D. Mass. Feb. 18, 2021) (allowing NuVasive's motions for summary judgment on breach of contract claims against both defendants). The primary

---

[1] As is apparent from the caption, NuVasive filed separate complaints against Day and Richard. As the cases are closely related, the court addresses them together, as Judge Casper has done in her orders. In this Report and Recommendation, the court will refer to docket entries as "Day, # ___" and "Richard, # ___."

issue still to be decided is what damages NuVasive suffered; Judge Casper will hold an evidentiary

hearing on October 19 and 20, 2021, to determine this amount. (Day, #216; Richard, #129.)

NuVasive filed renewed motions under Fed. R. Civ. P. 37(e) asking the court to impose

sanctions against defendants for spoliation of evidence, specifically, for Day's failure to preserve

text messages by replacing his phone and allowing all the text messages on it to be deleted, and

for both defendants' failure to preserve text messages by not deactivating their phones' automatic

text message deletion function, all after defendants were put on notice of litigation. (Day, #195;

Richard, #113.)[2] Plaintiff asks the court to take an adverse inference concerning the deleted text

messages and for the award of reasonable costs and expenses, including attorneys' fees, it incurred

in securing relief. (Day, #195 at 2; Richard, #113 at 2.)  On June 28, 2021, this court held an oral

argument on the motions. (Day, #211; Richard, #124.) The parties agreed that the court did not

need to have an evidentiary hearing on the motions and could proceed on the record as submitted

by the parties.

For the reasons set out below, the court RECOMMENDS that the motions for an adverse

inference, as well as the motions for costs and attorneys' fees, be ALLOWED.

II. <u>Facts</u>.

A. <u>Day and Richard violated their contractual obligations to NuVasive</u>.

The underlying facts with regard to both cases, set out in great detail in Judge Casper's

Order on summary judgment, *NuVasive*, 2021 WL 1087982, are summarized here.  Defendants

---

[2] NuVasive previously filed motions against defendants for sanctions (Day, #125, Richard, #74), substantially the same as the present motions, which this court denied without prejudice pending Judge Casper's ruling on the motions for summary judgment (Day, #184, Richard, #86). Day's and Richard's assertions in their filings related to the renewed motions that this court previously "considered and rejected" NuVasive's motions for sanctions (Day, #199 at 1; Richard, #116 at 1) are incorrect.

worked for NuVasive, a manufacturer of products used to treat spinal disease, selling NuVasive's products to doctors and hospitals (Day, #1 ¶ 2), and both defendants left NuVasive to do the same work for Alphatec Spine, Inc., a competitor in the spinal products market. *NuVasive*, 2021 WL 1087982, at *7. At the time they stopped working for NuVasive, defendants were subject to contracts obligating them, for a certain time after leaving employment with NuVasive, not to disclose NuVasive's "proprietary information" to anyone, including information about NuVasive's clients; not to solicit NuVasive's clients; and not to compete with NuVasive by working for a "Conflicting Organization." *Id*. at **2-3.

In the Order on summary judgment, Judge Casper describes in detail actions each defendant took after leaving NuVasive that violated the contracts. For example, once he was working for Alphatec, Day called Dr. Paul Glazer, to whom he previously sold NuVasive's products (Dr. Glazer had been an exclusive NuVasive user for seven years and the highest revenue-generating surgeon in NuVasive's sales territory in Massachusetts and Rhode Island). *Id.* at *3.[3] Day sent emails to other doctors and representatives at hospitals with whom he had previously worked, telling them he had left NuVasive and would be "their new point of contact with Alphatec," sent emails to hospital administrators with whom he had previously worked about specific pricing information, and disclosed information to Alphatec about Dr. Glazer's preferences concerning customized surgical instruments. *Id*. at **3-4.

As for Richard, once he was working for Alphatec, he continued to communicate with a doctor with whom he had worked while at NuVasive, met with Day and another Alphatec sales representative to discuss selling the doctor products, attended meetings with the doctor and

---

[3] According to NuVasive, after leaving NuVasive, Day "converted Dr. Glazer's business to Alphatec." (Day, #126 at 2.)

Alphatec's CEO, completed "recon reports" for Alphatec to use about doctors who had been within his NuVasive sales territory, sent emails to a hospital at which he previously had worked for NuVasive, stating that he was "the spine rep who covers" the hospital, and wrote notes to a doctor with whom he had previously worked, soliciting his business. *Id*. at **4-5.

B. Day and Richard were put on notice of litigation.

Nuvasive hired Day in August 2011 as a sales representative for an exclusive distributor of NuVasive's products. *Id*. at *2. In January 2019, Rival Medical, LLC, became the exclusive distributor of NuVasive's products in Massachusetts and Rhode Island. *Id*. at *3. Day was the president of Rival and oversaw all operations concerning the sale of NuVasive's products. *Id.* Day notified NuVasive on March 30, 2019, that he was terminating Rival Medical's business relationship with NuVasive. (Day, #196 at 2.) Two days later, on April 1, 2019, counsel for NuVasive sent Day and Rival Medical a "Notice of Material Breach and Litigation Hold," stating that Rival Medical was in breach of its Sales Agreement with NuVasive, and that Day was obligated to honor agreements not to compete and not to solicit NuVasive's customers, among other obligations. (Day, #196, Exhibit 1, [notice and litigation hold].) The letter culminated in this warning:

> [Y]ou and Rival Medical are now on notice of potential litigation and are required to take all necessary steps to preserve, and not destroy, conceal, or alter, any and all communications, documents, tangible things, and/or electronically stored information ("ESI") that may be relevant to this matter, including by way of example, and not limitation, emails, text messages, voicemails, records, files, and other data, wherever located and regardless of the format or media.

*Id*.

Two days later, on April 3, 2019, NuVasive's counsel sent counsel for both defendants, Attorney Bryan Busch, an email which included a reminder of the litigation hold and requested that Day return to NuVasive's counsel his iPhone, among other electronics, without "removing,

altering, wiping or otherwise changing any data from them tomorrow." (Day, #196 at 3.) NuVasive then filed suit approximately three weeks later, on April 22, 2019, alleging, among other claims, that Day failed to honor his non-competition and non-solicitation contractual obligations to NuVasive. (Day, #1). Counsel for NuVasive sent Attorney Busch a copy of the complaint by email the same day.  (Day, #196 at 4.)

Richard was working for Rival Medical in late March 2019, when Day informed NuVasive that Rival Medical was dissolving. (Richard, #114 at 1, 3.)  NuVasive notified Richard by email on April 3, 2019, that NuVasive would take "immediate action" if he did not affirm his intentions to remain with NuVasive. *Id*.  He did not do so, but instead affiliated with Alphatec by April 7, 2019. *Id*. at 4. On April 26, 2019, NuVasive filed suit against Richard and served the complaint on Attorney Busch.  *Id*. at 2.

C.  Day failed to preserve text messages.

Day testified at his deposition that when he worked for NuVasive, he was issued an iPhone that he used for business purposes, and when he transitioned to Rival, he used a certain personal phone for business purposes. (Day, #196-6 at 4.)[4] On April 1, 2019, after he left NuVasive for Alphatec, he began using an Alphatec-issued iPhone. *Id*.; (Day, #196 at 15.)  At the start of litigation in this case, he returned the NuVasive phone to NuVasive "without any relevant data"

---

[4] NuVasive was able to recover a small number of Day's text messages which establish beyond question that he utilized texting for business purposes. (Day, #196-12 [texts messages].)

on it. (Day, #204 at 2 n.1.)[5] As explained below, Day never produced any text messages from the other two phones.[6]

On July 16, 2019, NuVasive served Day with Requests for Production that sought, among other things, electronic communications between Day and any Massachusetts or Rhode Island surgeon, and between Day and certain named employees of Alphatec that mentioned or related to Day's leaving NuVasive, Day's decision to join Alphatec, Alphatec's products, Alphatec's executives, and/or Alphatec.[7] (Day, #196 at 4.)  Day responded to the discovery request by stating that he had no texts to produce because he had replaced his personal iPhone on April 24, 2019, and the text messages that were on that phone had been deleted. *Id*. He also stated in his response to the discovery request that, with regard to his new iPhone, on August 16, 2019, he "learned his phone had an automatic delete after 30 days setting" and on that date he changed the setting on his phone so it would preserve future text messages. *Id.* He further stated that "his small children have access to his phone and may have deleted items without [Day's] knowledge." *Id*.

---

[5] At the same time Day returned the iPhone to NuVasive without any data on it, Day returned a NuVasive-issued iPad on which Day had performed a "factory reset," wiping it of any data. (Day, #126 at 3 n.1.)

[6] It is not clear to the court what excuse Day proffered, if any, for not producing any texts from the Alphatec-issued iPhone, as the record is undeveloped on this point. *See* Day, #196 at 15 n.12.

[7] The named employees of Alphatec include Greg Soufleris, who is a former distributor of NuVasive's products who now works for Alphatec, is represented by Attorney Busch, the same counsel as Day and Richard, and who left NuVasive "in a similar manner" in 2017; two sales representatives for Alphatec, Colin Berhman and Adam Richard (the other defendant here), who left NuVasive shortly after Day did; and Pat Miles and Craig Hunsaker, Alphatec's CEO and Executive Vice President/General Counsel, respectively, the latter of whom was specifically identified by Day as a person who recruited him to Alphatec. (Day, #126 at 4 n.3.) As explained *infra*, Greg Soufleris is a defendant in a lawsuit in federal court in Florida that bears striking similarities to the suit here. In that case, the court found that he spoliated his text messages.

Day testified at his deposition that "when [he] got the new phone after [he] left NuVasive, none of the text messages [on his old phone] transferred." *Id*. at 12. When asked if he had taken any steps to preserve the text messages on his old phone, he answered, "I'm not a technical person. I got a new phone. They didn't transfer over when I got the new device." *Id*. at 13. Further, Day testified that somehow his new phone was set to delete text messages after 30 days. *Id*. When asked how the phone came to be programmed to do that, he answered, "I don't know if the person that gave me the phone that set it up for me could have done something to it.  I don't know." *Id*.

Day testified that it was not until August 16, 2019, that he discovered that his new iPhone was set to delete text messages after thirty days. *Id*. at 16. He explained: "I was informed by someone to check the setting because I thought it was on forever. I didn't know that there was a part of the phone that allowed you to keep messages past a certain time frame. So once I realized that that was on my phone, I changed it to forever given the lawsuit, and I'm supposed to preserve everything.  That's when I did it." *Id*. at 13. Thus, not only were all text messages from the time before Day left NuVasive destroyed when he replaced his old phone with a new one on April 24, 2019, but in addition, on his new phone, all text messages from the time he began work for Alphatec on April 1, 2019, until July 17, 2019, were deleted as well. *Id*. at 16. This occurred notwithstanding the fact that Day received a litigation hold notice that specifically warned him not to destroy electronic information such as texts on April 1, 2019. (Day, #196 Exhibit 1, [notice and litigation hold].)

NuVasive offered an affidavit from an expert who said that how long messages are stored on an iPhone can be changed by the user of the phone. (Day, #196-8 at 3.) The settings are 30 days, one year, or forever. *Id*. The default setting is forever. *Id*. To change the setting from forever, one has to select the settings tab, select the messages option, select the keep messages setting, and

then choose 30 days or one year. *Id*. When one changes the setting from the default setting of forever to either 30 days or one year, one is prompted with a question that requires a response: "Delete older messages?  This will permanently delete all text messages and message attachments from your device that are older than 30 days.  (Delete) or (Cancel)." *Id*. The setting can be changed back to forever at any time. *Id*.

  D. <u>NuVasive attempted to recover Day's lost text messages</u>.

   NuVasive subpoenaed Day's telephone records from his mobile carrier, Verizon Wireless. (Day, #196 at 16.) The content of any text messages was not available, but NuVasive received documents indicating that during the relevant time period, Day had exchanged text messages with Adam Richard, the defendant in the companion case; numerous Alphatec executives; at least five Massachusetts-based spine surgeons, including Dr. Glazer; and a manager at Beth Israel Medical Center. *Id*.

   NuVasive attempted to recover the destroyed text messages from many of the individuals with whom it was aware Day communicated. For example, NuVasive subpoenaed text messages from a former sales representative whom NuVasive alleges Day improperly solicited to join him at Alphatec, but that person told NuVasive that his text messages were also deleted from his phone. *Id*. at 6. NuVasive discovered that Adam Richard, whom NuVasive alleged was improperly solicited by Day to leave NuVasive and join Day at Alphatec, similarly deleted all of his text messages, as discussed below. NuVasive subpoenaed Alphatec for responsive communications, but Alphatec failed to produce any responsive text messages from the many Alphatec executives who communicated with Day in the relevant time period. *Id*. at 7. Dr. Glazer, who coincidentally is represented by Attorney Busch, as are the two defendants here, failed to preserve any text

messages because his phone also just happened to be set to delete text messages after 30 days. *Id*. at 7-8.

E. <u>Richard failed to preserve text messages</u>.

NuVasive served Requests for Production of Documents on Richard asking for, among other things, text messages relevant to the suit. (Richard, #114 at 4.) He has never produced any texts, because his iPhone's auto-delete function destroyed any responsive text messages. *Id*. at 5.

Richard used the same phone for business purposes while he worked for Rival and after he went to Alphatec. (Richard, #114-1 at 5.)  At his deposition, he testified that he recalled activating the feature that deletes text messages after 30 days "years ago." *Id*. He was told "at some point" in the litigation to turn the feature off, "to retain as many messages as I could."  *Id*.  He did not know the exact date. *Id*. He testified that he communicated with his surgeon customers by text. (Richard, #116 at 1.)

F. <u>NuVasive attempted to recover Richard's lost text messages</u>.

NuVasive attempted to recover Richard's deleted text messages by subpoenaing them from Sprint Spectrum L.P., Richard's carrier. (Richard, #114 at 6.)  Sprint did not produce any text messages. *Id*. NuVasive also attempted to obtain text messages from persons with whom NuVasive thought Richard communicated. *Id*. NuVasive subpoenaed Alphatec for responsive texts, but Alphatec did not produce any text messages in response. *Id*. and n.9.

NuVasive subpoenaed text messages from Colin Behrmann, another NuVasive employee who went to work for Alphatec, and received limited text messages from him because his phone coincidentally was also set to a 30-day automatic delete function. *Id*. at 6. The few texts that NuVasive did receive demonstrated that responsive texts would have existed on Richard's phone;

for example, there was a text message between Behrmann, Day, and Richard in which they discussed a meeting with a company that directly competes with NuVasive. *Id.* and n.10.

### III. The law concerning spoliation.

"The duty to preserve evidence arises when litigation is reasonably anticipated." *Gordon v. Dreamworks Animation SKG, Inc.*, 935 F. Supp. 2d 304, 314 (D. Mass. 2013) (internal quotation marks and citation omitted.). Fed. R. Civ. P. 37(e), effective as of December 1, 2015, addresses the failure to preserve electronically stored information (ESI) and applies here.[8] It permits the court to impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." *Id.* Where the court finds prejudice to a party from the loss of the information, and "[w]here electronically-stored information is lost due to the negligence or gross negligence of a party, amended Rule 37(e)(1) permits only the imposition of sanctions that are 'no greater than necessary to cure the prejudice.'"

---

[8] The Rule provides in full:

> Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>    (A) presume that the lost information was unfavorable to the party;
>    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

*Hefter Impact Techs., LLC v. Sport Maska, Inc.*, Civil No. 15-13290-FDS, 2017 WL 3317413, at *6 n.3 (D. Mass. Aug. 3, 2017) (quoting Fed. R. Civ. P. 37(e)(1)). Where the court finds that a party acted with the intent to deprive another from using ESI in litigation, a court may impose heightened sanctions, including presuming that the lost information is unfavorable to the party, issuing an adverse inference instruction to a jury, dismissing the action, or entering a default judgment. Fed. R. Civ. P. 37(e)(2).

Rule 37(e)(1) requires that the court find that the loss of the evidence prejudiced the moving party. Fed. R. Civ. P. 37 (e)(1). The court has "discretion to determine how best to assess prejudice in [a] particular case[.]" Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes. Rule 37(e)(1) does not "place a burden of proving or disproving prejudice on one party or the other." *Id.* To show prejudice resulting from spoliation, "a party must only 'come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'" *Micron Tech., Inc. v. Rambus, Inc.,* 645 F.3d 1311, 1328 (Fed. Cir. 2011) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 80 (3d Cir. 1994)); *TLS Mgmt. & Mktg. Servs. LLC vs. Rodriguez-Toledo*, Civil No. 15-2121 (BJM), 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017).

IV. Discussion.

A. Introduction.

At the outset, the court notes that the fact situation here, where employees of NuVasive who leave to work for Alphatec in violation of contractual obligations destroy text messages relevant to the ensuing litigation by activating, or failing to de-activate, the automatic-delete function on their phones, is not a novel one. In *Nuvasive v. Kormanis*, No. 1:18CV282, 2019 WL 11714 (M.D.N.C. Mar. 13, 2019), for example, the court held under very similar circumstances that defendant's failure to deactivate his automatic delete function to ensure his text messages were

preserved warranted sanctions of, at a minimum, an award of attorneys' fees, under Rule 37(e). *Id.* at **11-12.

NuVasive provided the court with an Order from the Middle District of Florida, Orlando Division, by District Court Judge Carlos E. Mendoza in the case of *NuVasive, Inc. v. Absolute Medical, LLC*, No. 6:17-cv-2206-Orl-41GJK, dated May 4, 2021, where defendants are also represented by Attorney Busch.  (Day, #204, Exhibit 1.)  There, NuVasive alleged that defendants, who worked for NuVasive, violated contractual obligations by defecting to Alphatec. *Id.* at 6-8. The court found that defendants spoliated emails and text messages. *Id.* at 12-16. With regard to the destroyed emails, the court found it "particularly concerning" that Attorney Busch, whom the court noted had been practicing in Georgia for over twenty years, told one defendant it was okay to close an email domain, which resulted in the destruction of evidence. *Id.* at 14.[9] In addition, the court found it "particularly troublesome" that the irretrievable loss of the emails occurred "*after* the Court expressly warned defendants about their previous untruthful statements in this litigation." *Id.* at 15 (emphasis in original). Defendants asserted that text messages were destroyed, among other excuses, when certain defendants activated an automatic 30-day delete function or got a new phone, excuses that are identical to those offered in this litigation. *Id.*

The court found that while defendants and their counsel argued that "the wholesale destruction of evidence in this case" was not intentional, given "Defendants' previous penchant for duplicity on the record in this litigation," defendants' assertions lacked credibility. *Id.* at 16. The court concluded that it would "presume that the lost information was unfavorable to

---

[9] The court ordered Attorney Busch to show cause why he should not be personally sanctioned for his involvement in the spoliation of evidence. *Id.* at 21. It does not appear from the docket that this matter has been resolved.

[Defendants]" and if the case went to trial would instruct the jury to draw a mandatory negative inference against defendants. *Id*. at 20. The court did not impose monetary sanctions because plaintiff had not requested them, but did not foreclose the possibility of doing so. *Id*. at 21 n.18.

B. Day and Richard reasonably foresaw litigation in early April 2019.

When litigation is "reasonably foreseeable" is an objective standard, that asks "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech.*, 645 F.3d at 1320 (citation omitted). The court finds that without question, Day reasonably foresaw litigation at least from the time he received the "Notice of Material Breach and Litigation Hold" from NuVasive's counsel on April 1, 2019. (Day, #196, Exhibit 1.) Richard reasonably foresaw litigation at least from April 3, 2019, when he received a warning from NuVasive that it would take "immediate action" against him if he did not communicate his intention to stay with the company. (Richard, #114 at 1, 3.)[10]

C. Day and Richard failed to take reasonable steps to preserve evidence.

Day just happened to acquire a new personal phone on April 24, 2019, approximately three weeks after he was put on notice that he should preserve electronic evidence in this matter, and two days after NuVasive filed suit, and in the process lost all text messages on that phone. The court finds that it is simply not credible that Day, a sophisticated businessman, who was on notice that he was being sued and was required to preserve evidence, and was at that moment represented by an experienced attorney who is well-acquainted with the law in this area, did not know that he

---

[10] Litigation was almost certainly "reasonably foreseeable" to both defendants long before this date, since they must have known when they left NuVasive to work for Alphatec that they were going to be sued. Day testified at his deposition that when he was discussing moving to Alphatec with Miles, he discussed Alphatec's indemnifying him, he made indemnification a condition of his joining Alphatec, and indemnification was included in his March 29, 2019 Offer of Employment from Alphatec. (Day, #126 at 9 n.7.)

was destroying all his text messages when data was transferred from his old to his new phone. Neither does the court believe that Day inadvertently either set his new phone to delete all text messages after thirty days, or caused someone else to do so, given the trouble that one would have to go to in order to change the default setting on the phone.[11]

The record is less developed about Richard's failure to preserve text messages, but for the same reasons stated above concerning Day, no less damning. He claims he was told "at some point" to retain his messages and did not even know the date he turned off his 30-day delete function. Whenever he turned it off, it was late enough so that no relevant evidence was preserved. Richard argues that "there is no evidence that [he] altered any routine practice in order to hide evidence" (Richard, #116 at 4), but his obligation to preserve evidence was not somehow wiped out because he routinely had been destroying text messages prior to litigation. *See Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) (holding that spoliating party failed to take reasonable steps to preserve text messages when party failed to suspend the auto-delete function on phone: "[i]t takes, at most, only a few minutes to disengage the auto-delete function on a cell phone.").  It is beyond argument that Richard did not take reasonable steps to preserve his texts.

D. <u>The lost evidence cannot be restored or replaced through additional discovery.</u>

NuVasive has met its burden to show that the lost evidence cannot be restored or replaced through additional discovery. *See Wai Feng Trading Co. Ltd v. Quick Fitting, Inc*., Civil No. 13-33-WES, 2019 WL 118412, at *5 (D.R.I. Jan. 7, 2019) ("To trigger the application of Fed. R. Civ.

---

[11] Day's testimony under oath at his deposition that "the person who gave me the phone that set it up for me could have done something to it" or that his small children might have set the phone to destroy text messages while playing with his phone (Day, #196 at 4, 13) does not warrant comment.

P. 37(e) to a claim of lost ESI, the movant must establish, first, that ESI has been lost and is not available in any other location."). First, Alphatec refused to respond to NuVasive's request for electronic discovery from any of its executives, which, apparently, is standard operating procedure for Alphatec in litigation of this sort; the court will not penalize NuVasive for not engaging in a futile effort to obtain information from the executives directly. *See Nuvasive v. Kormanis*, 2019 WL 11714, at \*10 (noting that Alphatec had refused to respond to subpoena for executives' texts, and "[g]iven Plaintiff's experience subpoenaing Alphatec, the record reveals no reason to believe any effort to subpoena those Alphatec officials [directly] for their text messages with Defendant Kormanis would result… in anything but wasted time and money.").

Second, NuVasive correctly notes that it is unable to seek text messages from surgeon-customers and others because the messages themselves are how NuVasive would identify them. (Day, #196 at 7.) In addition, even if NuVasive could identify customers whom Day and Richard solicited, NuVasive argues that it should not be required to perfect its rights under Rule 37(e) by sending subpoenas to the very customers for whom it is competing for business with Alphatec, an action which the customers might find harassing, (Day, #132 at 2 n.3), and the court agrees. Third, with regard to Dr. Glazer, whose defection to Alphatec was costly for NuVasive, the court notes that Dr. Glazer happens to be represented by the same attorney as Day and Richard and happens to have also destroyed his text messages from the relevant period.

E. NuVasive is prejudiced by the loss of the texts.

The content of lost evidence can never be proven to a certainty. "Typically, only the spoliator knows how much prejudice has been caused by the destruction." *Nationwide Life Ins. Co. v. Betzer*, No. 5:18-cv-39-Oc-30PRL, 2019 WL 5700288, at \*10 (M.D. Fla. Oct. 28, 2019). NuVasive has met its burden to "come forward with plausible, concrete suggestions as to what

[the destroyed] evidence might have been." *Micron Tech.*, 645 F.3d at 1328 (internal citations and quotation marks omitted).

The texts are relevant to the claims here. NuVasive claims that defendants violated contractual obligations to NuVasive, which included not disclosing NuVasive's proprietary information, such as client information, to anyone, not soliciting NuVasive's clients, and not competing with NuVasive. As Judge Casper has already found, there is strong record evidence that both defendants violated their contracts in myriad ways. As NuVasive argues, the lost text messages would have shown that Day communicated with Alphatec executives about moving to Alphatec, communicated with Alphatec employees about soliciting former NuVasive customers and engaging in inappropriate competitive activity, discussed moving to Alphatec with other NuVasive employees, solicited customers, including Dr. Glazer, to move to Alphatec, negotiated pricing and pushed the use of Alphatec's products at the hospital where Dr. Glazer operates, and converted Dr. Glazer's business to Alphatec. (Day, #196 at 1-2.) NuVasive argues that lost text messages from Richard would reveal his communications with surgeon customers and his communications with Alphatec executive about affilitating with Alphatec, among other subjects relevant to the case against him. (Richard, #114 at 5.)

It is clear that text messages pertaining to these claims were on both defendants' phones, because when NuVasive subpoenaed the texts from their phone companies, it obtained evidence that during the relevant time period, Day and Richard had exchanged text messages; and Day had exchanged text messages with Alphatec executives, numerous surgeons, and a manager at Beth Israel Hospital. (Day, #196 at 16). Concerning Richard, while his carrier did not produce any information about text messages, NuVasive was able to discern from records subpoenaed from

another NuVasive employee who left for Alphatec that pertinent texts would have been found on Richard's phone. (Richard, #114 at 6.)

The court finds that the requirements of Fed. R. Civ. P. 37(e)(1) have been met, according to which NuVasive is entitled to have the court order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). As set out below, however, the court further finds that the requirements of Fed. R. Civ. P. 37(e)(2) are met, allowing the court to impose more stringent sanctions.

F. Day and Richard intentionally destroyed the texts.

Heightened sanctions under Rule 37(e)(2) can only be imposed where there is a finding that "the party that lost the information acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee. The "intent to deprive" finding may be made by the court when ruling on a pretrial motion. *Id*. As the court in *Paisley Park* explained:

> "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). There need not be a "smoking gun" to prove intent. *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). But there must be evidence of "a serious and specific sort of culpability"        regarding        the        loss        of        the        relevant        ESI. *Id.*

*Paisley Park,* 330 F.R.D. at 236.

"An analysis of whether there is prejudice or an intent to deprive overlaps." *Betzer*, 2019 WL 5700288, at *10. A finding of intent to deprive can support "an inference that the lost information was unfavorable to the party that intentionally destroyed it" and "also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e), 2015 Notes of Advisory Committee. For the reasons set out above,

the court has already found that NuVasive is prejudiced by the loss of the text messages, a fact which obviously mitigates in favor of finding that the texts were intentionally destroyed.

Other "circumstantial evidence" informs the court's conclusion that the destruction of the evidence was intentional. *Paisley Park*, 330 F.R.D. at 236. First, Day's credibility is highly suspect. As discussed above, the court does not credit his testimony concerning how the text messages came to be lost. In addition, NuVasive outlines how Day testified falsely at his deposition with regard to an unrelated issue, namely, he said in November 2019 that he could not recall the most recent trip he took with Dr. Glazer or the last time they had dinner together, when in fact he and his wife traveled to Napa, California, with Alphatec's CEO and wife, and Dr. Glazer, Dr. Glazer's wife and his stepdaughter, in July 2019. (Day, #141 at 2.) It simply is not believable that Day had forgotten a trip to Napa, California, four months after it happened.

Richard fares no better, as his vague explanation only reinforces the conclusion that either he was given no instructions to preserve text messages by his attorney, or he disregarded them. Either way, a finding of intentional destruction is warranted. *See Paisley Park*, 330 F.R.D. at 234 ("[P]arties are responsible for the conduct of their attorneys; an adverse party is not required to bear the burden of misconduct committed by the opposing side's counsel.") The fact that text messages were lost by both defendants, and that others, such as Dr. Glazer, also represented by Attorney Busch, just happened to also destroy their text messages, adds to the weight of the evidence of intentional destruction. On the subject of counsel's culpability for the destruction of the evidence, it is glaringly obvious that the destruction of text messages due to automatic deletion functions is a common problem, and counsel here certainly was on notice that it was his obligation to make sure spoliation in that manner did not occur. It is disturbing that he did not do so.

18

For the above reasons, the court finds that Day and Richard acted with intent to deprive NuVasive of the lost information in this litigation. The court thus recommends that Judge Casper, when ruling on what damages NuVasive is able to prove, presume that the lost evidence was unfavorable to defendants. The court further recommends that NuVasive be awarded the attorneys' fees and expenses it incurred in prosecuting its initial motions for sanctions and its renewed motions, including costs associated with NuVasive's attempts to recover the lost evidence.

## V. Conclusion.

For the reasons stated, the court RECOMMENDS that plaintiff's motions (Day, #195, Richard, #113) for an adverse inference and for award of reasonable costs and expenses, including reasonable attorneys' fees it incurred in securing relief, be ALLOWED.

## VI. Review by the District Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Federal Rules Civil Procedure, shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ M. Page Kelley
M. Page Kelley
August 23, 2021                              United States Magistrate Judge