**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-10800 |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY DAY | ) | |
| | ) | |
| Defendant | ) | |
| | | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:19-CV-10995 |
| | ) | |
| vs. | ) | |
| | ) | |
| ADAM RICHARD, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANTS OBJECTIONS TO MAGISTRATE JUDGE M. PAGE KELLEY'S REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S RENEWED MOTIONS FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

COME NOW, Defendants Timothy Day ("Day") and Adam Richard ("Richard") in the above-styled civil actions and file their Objection to Magistrate Judge M. Page Kelley's Report and Recommendation Regarding Plaintiff's Renewed Motions for Sanctions for Spoliation of Evidence and show this Court as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

NuVasive filed its Complaint against Day on or about April 22, 2019 asserting claims against for tortious interference of a sales agreement, breach of contract, and injunctive relief. (*See gen.* Day Doc. 1, Complaint; Doc. 80, Amended Complaint) NuVasive's breach of contract claim against Day encompasses its allegation that Day induced Adam Richard and Colin Behrmann to

1

leave NuVasive. *Id.* at ¶ 42. NuVasive moved the Court for sanctions arising from allegedly spoliated text messages related to Defendant's upgrade of his personal cell phone. (*See. Gen.* Day Doc. 126.) Defendant Day testified that he upgraded his phone in April 2019 and that text messages from his previous cell phone were no longer accessible on the upgraded phone. (See. Day Doc. 126-6.) Mr. Day conceded that he is not a technical person, but that Apple store employees who helped him set up the new phone were instructed to maintain all previous settings. *Id.* Only a few months later, Day discovered that the text message setting on the new phone was set to "auto delete.". *Id.* As a result of this setting, approximately three months' worth of text messages may have been automatically deleted. During Day's deposition, however, NuVasive failed to question Day regarding his text messages during that limited timeframe. (*See gen.* Day Doc. 126-6).

As to Richard, NuVasive filed its Complaint on or about April 26, 2019 asserting claims against Defendant Richard for breach of contract and injunctive relief. (*See gen.* Richard Doc. 1, Complaint.) NuVasive moved the Court for sanctions arising from allegedly spoliated text messages. (*See. Gen.* Richard Doc. 75.) Defendant Richard testified that he activated the auto delete function on his cell phone years ago, but that he turned off that feature after being told to retain his messages (Richard Doc. 75-1, at p. 8, 10-16, p. 9, 5-10.) During his deposition, Mr. Richard testified that he may have sent a couple of text messages to Dr. Zaidi, Dr. Arnaout, Dr. Kwon, Dr. Glazer, and/or Dr. Stippler to catch up and say hello. (*Id.* at p. 80, 12-19.) NuVasive did not inquire further as to the dates or content of these communications. *Id.* NuVasive also questioned Mr. Richard regarding text messages exchanged with Timothy Day and Colin Behrman that NuVasive had it in its possession. (*Id.* at p. 91, 17-24, p. 97, 18-25.) NuVasive failed to question Mr. Richard further regarding the existence of any other text messages with former clients

2

or that would otherwise be relevant to its claims for breach of contract against Mr. Richard during the relevant timeframe. *Id.*

Despite this, NuVasive now moves for sanctions and requests an adverse inference claiming that Mr. Richard and Mr. Day spoliated text messages. However, NuVasive cannot establish the existence of any relevant text messages that were intentionally spoliated so as to support its motion for sanctions and request for an adverse inference. Both Day and Richard have fully complied with all of NuVasive's discovery requests during the course of this litigation and have produced more gigs of data, including personal emails, text messages, Rival Medical emails, and emails from their current employer. The unintentional loss of these text messages does not rise to the level of sanctionable conduct. The Magistrate Judge incorrectly concludes that the data was intentionally deleted and granted an adverse inference instruction based solely on conduct by non-parties in unrelated civil actions. However, the Magistrate Judge may not rely on the conduct of non-parties to create the appearance of impropriety to improperly penalize Day and Richard.

## STANDARD OF REVIEW

The district judge reviews a magistrate judge's report and recommendation de novo. Fed. R. Civ. P. 72(b)(30). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

## OBJECTIONS

Defendants Day and Richard object to the Magistrate's Report and Recommendation. First, Day and Richard object on the grounds that the Report incorrectly found that Day and Richard failed to preserve text messages and intentionally acted to deprive NuVasive of information. Second, Day and Richard object on the ground that the Report incorrectly found that NuVasive

has been prejudiced by the alleged loss of information and incorrectly found that NuVasive cannot discover the allegedly lost information through additional discovery. Lastly, the Report erroneously grants sanctions against Day and Richard by relying on its perceived "motivations" of non-parties and perceived "reasonableness" of the conduct of non-parties in separate and unrelated actions.

## ARGUMENTS

A. *The Report incorrectly found that Day and Richard failed to preserve text messages and intentionally acted to deprive NuVasive of information.*

Fed. R. Civ. P. 37(e) ("Rule 37") governs the analysis this Court must undertake before imposing sanctions on a party for the failure to preserve electronically stored information ("ESI"). The rule provides that

> "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

Only when the answers to these questions are yes, may the court then proceed to evaluating the appropriateness of sanctions under Rule 37(e)(1) (if there is a finding of prejudice) or (e)(2) (if there is a finding of intent to deprive). As to a finding of prejudice, the advisory committee notes to Rule 37(e) articulate that the burden is not on any particular party, but rather the court has the discretion to determine how to assess prejudice in particular cases, including to consider where the abundance of preserved information may appear sufficient to meet the needs of all parties. Rule 37(e) Notes of Advisory Committee on 2015 Amendments.

The sanctions under R. 37(e) arise only where the party in possession of the lost ESI failed to take reasonable steps to preserve the information and that the information could not have been restored or replaced through additional discovery. *Wai Feng Trading Co. v. Quick Fitting, Inc.,* 2019 U.S. Dist. LEXIS 4113, *18, (D. R.I., January 7, 2019). Proof that the lost ESI was important or material to a significant issue is upon the movant. *Id.* at *20. In evaluating the 'reasonable steps', "courts must be mindful that perfection in preserving all relevant electronically stored information is often impossible, as well as that this factor requires consideration of the litigation sophistication of the party in possession of the ESI and the proportionality to the litigation of costly and aggressive preservation efforts." *Id.,* at *18. (Internal citations omitted.) After the court determines that a party failed to reasonable steps to preserve, the court must then determine if the loss of the ESI caused prejudice or if the party acted with intent to deprive. *Id.,* at *20 citing to Fed. R. Civ. P. 37(3)(1-2). A party must first prove that the allegedly destroyed documents existed in the first place before they can show prejudice from their loss. *See Hefter Impact Techs.,* 2017 U.S. Dist. LEXIS 122122, at * 7 (D. Mass. August 3, 2017). Similarly, the movant's failure to depose witness who could have testified regarding the content of the lost ESI or how it was material to the claim belies a finding of prejudice. *Quick Fitting, Inc.* at *20.

The remedy of an adverse inference that the lost information was unfavorable requires a finding of intentional spoliation. *Fed. R. Civ. P. 37(e).* Meaning that the court must find that the party acted with the intent to deprive another party of the information's use in the litigation. *Quick Fitting, Inc.,* at *23 citing to *Fed. R. Civ. P. 37(e).* This intent to deprive can be shown by evidence that the ESI actually existed, as to a material fact issue that is pivotal to the outcome of the case and that the party took affirmative action to cause the loss knowing its duty to preserve and the loss cannot be credibly explained as far as deviation from established protocols. *Quick Fitting,*

5

*Inc.,* at *23. Furthermore, the remedy of an adverse inference is appropriate only where the evidence permits a finding of bath faith in the destruction of evidence. *Hefter Impact Techs., LLC* at *22.

Here, NuVasive failed to show that Mr. Day acted with the intent to deprive as required by Rule 37(e)(2). The intent to deprive requirement can be met by a showing that particular ESI existed as to a material fact that is pivotal to the outcome of the case and that Mr. Day took some affirmative action to cause its loss. *See gen. Quick Fitting, Inc.,* at *23. Again, as outline *supra,* the depositions of Mr. Behrman and Mr. Richard did not result in the identification of any text messages with Mr. Day regarding their potential move from Alphatec. Thus, the evidence already establishes that this particular subset of ESI did not exist in the first place. Similarly, NuVasive has not deposed any of the allegedly solicited surgeons to determine if Mr. Day ever solicited them via text message. Most importantly, however, Day's testimony does not show that he took affirmative steps to destroy his text messages. Mr. Day merely upgraded his personal cellphone and relied on an Apple store employee to maintain all the same settings of his previous phone. There is no testimony that he affirmatively turned on the auto-delete setting in anticipation of litigation. Instead, he simply moved to a new phone.

Likewise, NuVasive has failed to show that Mr. Richard acted with the intent to deprive as required by Rule 37(e)(2). The intent to deprive requirement can be met by a showing that particular ESI existed as to a material fact that is pivotal to the outcome of the case and that Mr. Richard took some affirmative action to cause its loss. *See gen. Quick Fitting, Inc.,* at *23. Again, the deposition of Mr. Richard did not result in the identification of any text messages wherein he solicited a former NuVasive surgeon. Thus, the evidence already establishes that this particular subset of ESI did not exist in the first place. Similarly, NuVasive has not deposed any of the

allegedly solicited surgeons to determine if Mr. Richard ever solicited them via text message. Most importantly, however, Richard's testimony does not show that he took affirmative steps to destroy his text messages. There is no testimony that he affirmatively turned on the auto-delete setting in anticipation of litigation. On the contrary, Mr. Richard testified that he turned off that feature after being put on notice of potential litigation. (Richard Doc. 75-1, at p. 8, 10-16, p. 9, 5-10.) The facts in evidence fall short of the required intent to deprive requirement of R. 37(e)(2).

B. *The Report incorrectly found that NuVasive has been prejudiced by the alleged loss of information and incorrectly found that NuVasive cannot discover the allegedly lost information through additional discovery.*

NuVasive contends that Mr. Day intentionally destroyed text messages from his cellphone and as such it is entitled to an adverse inference jury instruction. In support of its spoliation argument, NuVasive cites Mr. Day's upgrade of his personal cell phone and failure to realize the automatic delete setting was activated. (Day Doc. 126-6; Doc. 90-1.) However, Mr. Day did not alter any routine practice in order to hide evidence nor did he take intentional steps to destroy text message content after being put on notice. Instead, Mr. Day upgraded his personal cell phone as a matter of routine practice and relied upon the Apple salespeople to assist with text messages settings. There is **no** testimony that Day knowingly made changes to his cell phone settings after being put on notice of this litigation or that he took any steps to destroy his text messages.[1] As discussed *supra,* in determining the reasonable steps required of a party, the court must take into account the sophistication of the party in possession of the ESI. *Quick Fitting, Inc.* at *18. While Mr. Day's failure to investigate what settings were activated on his cell phone may look careless

---

[1] The Declaration of Hansel "RIP" C. Clayton does not add any clarity to the instant motion since he has no personal knowledge (or evidence that he relied on) as to when Mr. Day's original phone settings were changed from any original factory settings. Thus, the Report's reliance on Clayton's declaration as undisputed and dispositive in the instant case is inappropriate.

in hindsight, this by no means rises to the level of intentional destruction of evidence required in a spoliation analysis. Moreover, NuVasive's attempt to prove that damaging communications existed through the document production of Charles Crocket must fail considering that Mr. Crocket's production is incomplete and has been edited and/or redacted prior to production. Likewise, NuVasive's attempt to paint Dr. Glazer's failure to preserve text messages as nefarious must fail given the testimony in the record from Dr. Glazer unequivocally testifying that Mr. Day never solicited his business on behalf of Alphatec. *See* Day Doc. 194-1, *Rival AAA. Transcript,* at Vol. 4, pg 830, 12-17.

Similarly as to Richard, NuVasive generally argued that Mr. Richard intentionally deleted text messages. (*See gen.* Richard Doc. 75.) However, Mr. Richard's deposition testimony does not support this contention. There is no evidence that Mr. Richard altered any routine practice in order to hide evidence. Likewise, there is no evidence that Mr. Richard took any additional steps to destroy text message content after being put on notice of potential litigation. Instead, Mr. Richard testified that the auto delete function was activated on his phone for years, and that he changed it after learning of the anticipated litigation. (Richard Doc. 75-1, at p. 8, 10-16, p. 9, 5-10.) Likewise, there is **no** testimony that Mr. Richard knowingly made changes to his cell phone settings after being put on notice of this litigation or that he took any steps to destroy his text messages. In determining the reasonable steps required of a party, the court must take into account the sophistication of the party in possession of the ESI. *Quick Fitting, Inc.* at *18.[2] Moreover, the only potentially relevant text messages identified during the deposition were 'hello' messages to specific surgeons. (Richard Doc. 75-1, at p. 80, 12-19.) However, NuVasive did not inquire further as to the dates these text messages may have been sent, nor whether the text messages contained

---

[2] NuVasive's citations to cases in Minnesota, North Carolina, Virginia, California, and/or the 8th Circuit are not binding upon this Court.

anything other than a hello. (*Id.*) Similarly, NuVasive has not taken the step of subpoenaing any of those particularly identified surgeons to inquire as to these potential text communications.

NuVasive failed to show that the missing ESI was important or material to a significant issue in the case or that it is prejudiced as a result of the loss of Mr. Day's or Mr. Richard's text messages. As a preliminary factor, NuVasive must show that the text messages existed wherein Day or Richard (i) solicited a former employee; or (ii) solicited a former NuVasive Client. (See. Gen. Day Doc. 1, Day Doc. 80, Richard Doc. 1, Richard Doc. 75-1, at p. 80, 12-19). In the instant case, NuVasive had the opportunity to conduct the necessary discovery to explore the content of communications between Mr. Day and Mr. Richard and other individuals during that limited timeframe but chose not to subpoena, depose or otherwise retrieve this information from the other parties on the text message exchanges. The depositions NuVasive did choose to conduct did not result in the identification of any text messages with Mr. Day regarding the potential change in employment. Notably, NuVasive has not deposed any of the surgeons it contends Mr. Day or Mr. Richard solicited. Lastly, Day and Richard have produced gigs of data including emails from personal accounts, emails from Rival Medical accounts, emails from their current employer accounts, and text messages thus indicating their continued cooperation and participation in the discovery process. As discussed *supra,* a party must first prove that the allegedly destroyed documents existed in the first place before they can show prejudice from their loss. *See Hefter Impact Techs.,* 2017 U.S. Dist. LEXIS 122122, at * 7 (D. Mass. August 3, 2017). Here, NuVasive's failure to depose the witness who could have testified regarding the content of the lost ESI or how it was material to the claim precludes a finding of prejudice. *See Quick Fitting, Inc.* at *20. Accordingly, NuVasive failed to meet the prejudice requirement under Rule 37(e)(1) and the Magistrate erred in finding otherwise.

C. *The Report erroneously grants sanctions Day and Richard by relying on its perceived "motivations" of non-parties and perceived "reasonableness" of the conduct of non-parties in separate and unrelated actions.*

Most concerning, the Report relies on the conduct of non-parties outside Day and Richard's control to create the appearance of impropriety in an effort to justify its erroneous conclusions. To support its erroneous findings, the Report cites to the conduct of (1) non-party Alphatec in various civil actions; (2) non-party Greg Soufleris in unrelated civil action; (3) non-party Bryan Busch in unrelated civil action; (4) non-party Bryan Busch in the instant cases; (5) non-party Dr. Paul Glazer; (6) non-party Kormanis in unrelated civil action; and (7) non-party Absolute Medical, LLC in unrelated civil action. (*See gen.* Report at Day Doc. 217 and Richard Doc. 186). The Magistrate Judge's citations to and reliance on the conduct of all these non-parties in various unrelated civil actions reflects its desire to make a finding of spoliation, instead of the effort required by Fed. R. Civ. 37(e) to evaluate the actual conduct of the parties prior to imposing sanctions. Fed. R. Civ. P. 37(e) provides that

> "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

Only when the answers to these questions are yes, may the court then proceed to evaluating the appropriateness of sanctions under Rule 37(e)(1) (if there is a finding of prejudice) or (e)(2) (if there is a finding of intent to deprive).

Here, the Report engages in a retroactive approach to sanction Day and Richard by evaluating the conduct of every possible individual, entity, attorney, or competitor that has stood

10

in the way of NuVasive's desire to stifle market competition. *See* Report at Day Doc. 217, Richard Doc. 186, at page 6 (citing to conduct of Alphatec, Greg Soufleris, attorney Busch and citing to their leaving NuVasive "in a similar manner" in 2017); pg. 8 (citing to non-party Alphatec's failure to produce text messages from its executives); pg. 8-9 (citing to Dr. Glazer being "coincidentally" represented by attorney Busch, and whose "phone also happened" to be set to auto delete text messages); pg. 11 (noting that "the fact situation here, where employees of NuVasive who leave to work for Alphatec in violation of obligations destroy text messages relevant to the ensuring litigation…" and further citing to a North Carolina District court order in unrelated litigation where the court held "under very similar circumstances that defendant's failure to deactivate his automatic delete function…."); pg. 12 (noting Florida District Court order in unrelated litigation where the Court granted an adverse inference and citing to two full paragraphs in that Court's order regarding attorney Busch who represented defendants in the unrelated Florida case); pg. 15 (again noting that Dr. Glazer "happens to be represented by the same attorney as Day and Richard and happens to have also destroyed his text messages from the relevant period.[3]"); and pg. 18 (noting that "[o]n the subject of counsel's culpability for the destruction of the evidence, it is glaringly obvious that the destruction of text messages due to automatic deletion functions is a common problem…" and that his conduct is "disturbing".)

      The Report creates the absurd loophole where a party may be sanctioned for destruction of evidence, not based on its own conduct, but based on the conduct of individuals outside its control in their private and business lives without limitation. The Report creates a roadmap for NuVasive to succeed on all existing and future litigation by not by the merits, but by being able to (1) shift

---

[3] The Report essentially questions the credibility of a non-party by citing to the conduct of a different non-party to support the conclusion that Day and Richard acted with intent to destroy information.

the burden of proof to individuals without the disposal of its billion dollar litigation machinery and (2) painting the perfect picture of "circumstantial evidence" to create the appearance of impropriety. If adopted, the Report disavows the requirements of the Federal Rules of Civil Procedure, jurisdictional powers of the District court, and the inherent requirement that cases be tried on the merits.

## CONCLUSION

For the reasons set forth above, Defendants Day and Richard respectfully ask that this Court reject the Report's findings and recommendations and engage in its own evaluation of the merits and actual facts in evidence in the instant case.

Dated this September 7, 2021.

                                  Respectfully submitted,

                                  TIMOTHY DAY
                                  *By his attorneys,*

                                  */s/ Steven D. Weatherhead*
                                  Steven D. Weatherhead, BBO # 637601
                                  Marathas Barrow Weatherhead Lent LLP
                                  One Financial Center, 15th Floor
                                  Boston, Massachusetts 02111
                                  (617) 830-5458
                                  sweatherhead@marbarlaw.com


                                  */s/ Bryan E. Busch*
                                  Bryan E. Busch, *Admitted Pro Hac Vice*
                                  Busch Mills & Slomka, LLP
                                  6400 Powers Ferry Road, N.W., Ste. 391
                                  Atlanta, Georgia 30339
                                  Phone: 404-800-4062
                                  bb@bsms.law

## **CERTIFICATE OF SERVICE**

      I, Bryan E. Busch, hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 7, 2021.

                                          */s/  Bryan E. Busch*